UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WANDA G., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:22-cv-216-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Wanda G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 18).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 6, 12. Plaintiff also filed a reply brief. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 6) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for SSI on October 9, 2019,[1] alleging disability beginning October 8, 2018 (the disability onset date), due to a variety of physical and mental impairments, including bipolar disorder, depression, anxiety, and migraine headaches. Transcript

---

[1] The Court notes that Plaintiff previously filed an application for Disability Insurance Benefits on April 26, 2012, alleging disability since June 1, 2010. That application was denied on November 30, 2012, and again on reconsideration on September 25, 2013. After a hearing before an Administrative Law Judge on July 19, 2018, an unfavorable decision was issued on July 27, 2018. There was no further appeal. Tr. 19.

("Tr.") 19, 226-37, 247. Plaintiff's claim was denied initially on March 17, 2020, and again on reconsideration on June 17, 2020, after which she requested an administrative hearing. Tr. 19. On February 4, 2021, Administrative Law Judge Stephen C. Fulton, ("the ALJ") conducted a telephonic hearing,[2] at which Plaintiff appeared and testified and was represented by Amanda Weber, an attorney. *Id*. Yakov Taitz, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on March 15, 2021, finding that Plaintiff was not disabled. Tr. 13-35. On January 25, 2022, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's March 15, 2021 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[2] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 19.

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his March 15, 2021 decision:

1. The claimant has not engaged in substantial gainful activity since October 9, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with L5-S1 herniation effacing thecal sac; right hip trochanteric bursitis with tear of lateral labrum; obesity; migraine headaches; asthma; bipolar/depressive disorder; and anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[3] except she can tolerate only occasional climbing, stooping, keeling, crouching, or crawling, with a need to avoid concentrated exposure to extreme cold, extreme heat, humidity, and fumes, odors, dusts, gases. The claimant could understand and remember simple instructions. The claimant could concentrate for 2-hour periods over 8-hour day on simple tasks. The claimant could interact appropriately with coworkers, supervisors, or the general public. The claimant could adapt to changes in the work setting.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on May 26, 1971 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 9, 2019, the date the application was filed (20 CFR 416.920(g)).

Tr. 19-35.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on October 9, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 35.

## ANALYSIS

Plaintiff asserts three points of error. *See* ECF No. 6-1 at 1, 14-30. First, Plaintiff argues that the ALJ's physical RFC finding was not supported by substantial evidence because the ALJ failed to properly evaluate or incorporate the opinion of consultative examiner Nikita Dave, M.D. ("Dr. Dave"). *See id*. at 14-23. Plaintiff additionally argues that the ALJ improperly relied on the opinions of state agency reviewing physicians D. Brauer, M.D. ("Dr. Brauer"), and C. Krist, D.O. ("Dr. Krist"), over the opinion of Dave, and failed to adequately explain how he considered the supportability and consistency factors in determining the persuasiveness of the medical opinion evidence. *See id*. at 15-16. Plaintiff contends that the ALJ's analysis of Dr. Dave's opinion was deficient, in part, because the ALJ "did not specifically discuss Dr. Dave's opinion that Plaintiff has a moderate limitation for standing and walking;" and did not explain why he "reject[ed]" that particular finding. *See id*. at 18. Further, according to Plaintiff, remand is required because Dr. Dave's opinion does not support light work, and if Plaintiff were limited to sedentary work, a finding of disability would have been appropriate pursuant to the Medical-Vocational Guidelines. *See id*. at 19-20.

5

Plaintiff next argues that, because the ALJ found Plaintiff's migraine headaches to be a severe impairment, he should have incorporated an off-task time limitation into the RFC to accommodate Plaintiff's migraine condition. *See* ECF No. 5-1 at 23-25. Finally, Plaintiff argues that the ALJ's the mental RFC finding was "not tethered to any medical opinion evidence" and was improperly based on the ALJ's own lay interpretation of the evidence. *See id*. at 25-30.

The Commissioner argues in response that the exertional and postural limitations in the RFC finding were supported by substantial evidence, including the opinions of Drs. Dave, Brauer, and Krist, Plaintiff's treatment records and other objective evidence indicating mild to moderate symptoms and limited specialized treatment for her back and hip issues, and Plaintiff's daily activities. *See* ECF No. 12-1 at 10-17. The Commissioner further argues that the ALJ's evaluation of Dr. Dave's medical opinion was properly supported by substantial evidence, and the ALJ reasonably explained his rationale for finding the opinions of Dr. Brauer and Dr. Krist "persuasive" and Dr. Dave's opinion only "somewhat persuasive." *See id*. at 17-20. Moreover, argues the Commissioner, the ALJ had no duty to recontact Dr. Dave as Plaintiff argues, because there were no gaps or deficiencies in the evidence that prevented the ALJ from reaching an informed decision. *See id*. at 21.

Second, the Commissioner argues that the ALJ properly and reasonably assessed Plaintiff's mental abilities based on substantial evidence including mental status examinations, Plaintiff's psychiatric history, Plaintiff's statements about her symptoms and activities, and information from medical source opinions, and the ALJ was not required to rely solely on any one opinion in determining Plaintiff's mental RFC, as Plaintiff argues. *See id*. at 22-26.

In response to Plaintiff's third point, the Commissioner argues that the ALJ fully considered Plaintiff's allegations regarding her migraine-related limitations, and substantial evidence supports the ALJ's RFC finding, including the limitations related to Plaintiff's migraines, which the ALJ

clearly explained. *See id*. at 26-28. Furthermore, argues the Commissioner, Plaintiff did not meet her burden to demonstrate that she was more restricted than found by the ALJ. *See id*. at 28-29. Regarding Plaintiff's argument that the vocational grids would have directed a finding of disability if only the ALJ had classified her as "closely approaching advanced age" (*see* ECF No. 6-1 at 20), the Commissioner responds that Plaintiff's argument is speculative, and the ALJ properly applied the vocational rules at step five. *See* ECF No. 12-1 at 29-31.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ provided a thorough and detailed discussion of the record evidence, including the opinion evidence, Plaintiff's treatment records and medical imaging results, evidence of improvement and stabilization with medication, and Plaintiff's statements about her symptoms and daily activities, and the ALJ's RFC finding was supported by substantial evidence. Based on this substantial evidence, the ALJ reasonably concluded that Plaintiff retained the RFC to perform a range of light work with the limitations noted in the RFC finding. The ALJ appropriately acknowledged Plaintiff's complaints of lower back pain, hip pain, migraine headaches, asthma, mental illness, and other impairments and reasonably reconciled these factors with the record evidence as a whole to arrive at an RFC finding that accounted for Plaintiff's credibly supported symptoms and limitations. Accordingly, the Court finds no error.

Plaintiff testified that she had not worked since 2010 (Tr. 49), and she was unable to work due to a combination of her physical and mental conditions, including bipolar disorder, depression, anxiety with panic attacks, trigeminal neuralgia, cluster headaches, back pain due to problem at L5-S1, hypothyroidism and asthma (Tr. 50-52). Plaintiff described problems with memory, attention, and concentration, Tr. 53-54. She also described anxiety when needing to leave her home and testified that she needs someone with her. Tr. 53-55. She reportedly spent most of the day in bed. Tr. 57. In a December 3019 function report, Plaintiff indicated that she was unable to tolerate prolonged sitting, standing, or walking, or any heavy lifting, and estimated that she could walk less than one mile. Tr. 267-68. She reported she was reliant on others to prepare meals and perform household chores. Tr. 264. She also indicated that she experienced headaches approximately four times per month. Tr. 272.

Prior to the application filing date, Plaintiff was hospitalized for six days in January 2017 for depressive episode and suicide thoughts. Tr. 349, 351-57. She improved with adjustment of her medications and was discharged in stable condition. Tr. 349.

On January 8, 2019, Plaintiff underwent a mental health assessment at BestSelf Behavioral Health and was admitted for treatment on February 19, 2019. Tr. 371. Plaintiff was diagnosed with bipolar II disorder. *Id*. She attended two individual therapy sessions, but she felt that her counselor "did not do anything." Tr. 372. The record indicates that Plaintiff was preoccupied with obtaining papers in support of disability. Tr. 372, 394.  Plaintiff was lost to contact after only two sessions and discharged from treatment. Tr. 370, 372.

Primary care treatment notes in January 2019 indicate that Plaintiff's asthma was mild and well controlled. Tr. 427. On April 18, 2019, Plaintiff presented to her primary care provider complaining of elbow pain. Tr. 441-42. She recalled banging her elbow on a shopping cart and thought that might be the cause. Tr. 442. She also reported that her husband recently had surgery,

and she was helping him "a lot" and "doing more than usual." *Id*. Naproxen was continued and Prednisone restarted. *Id*.

Plaintiff treated with her primary care provider on July 3, 2019, and was assessed for bipolar depression, memory impairments, thyroid nodule, and varicose veins with pain. Tr. 438. She reported pain with ambulation, intermittent lower extremity edema, and worsening memory issues. *Id*. Plaintiff was restarted on Seroquel, Effexor, and Klonopin. Tr. 440.

On July 13, 2019, Plaintiff initiated psychiatric treatment treating with Syed Ahmed, M.D. ("Dr. Ahmed"), for bipolar disorder. Tr. 925. Plaintiff reported poor concentration and attention span, as well as hopelessness and worthlessness. *Id*. She reported that she had "a lot of stressors going on in her life," including a history of failed businesses and her husband's deteriorating health; she also reported hearing voices when she was stressed. *Id*.  She presented with appropriate hygiene, eye contact, clear speech, unremarkable thoughts, normal motor activity level, and she denied suicidal or homicidal thoughts and hallucinations. Tr. 926. Dr. Ahmed continued Plaintiff on Seroquel, Venlafaxine, and Klonopin, and prescribed Ambien as needed for sleep. *Id*. On August 14, 2019, Plaintiff returned to Dr. Ahmed with "okay" mood and stable findings on examination. Tr. 922.

On September 5, 2019, Dr. Ahmed completed a "Medical Examination for ABAWD Determination." Tr. 932-33. He indicated "limited prognosis" and "continued treatment." Tr. 932. He assessed bipolar disorder and opined that Plaintiff had limitations that precluded working in competitive employment for at least 80 hours per month. Tr. 933. Dr. Ahmed opined that Plaintiff's limitations were permanent, and her impairments had lasted or would last at least 12 months. *Id*.

On September 12, 2019, Plaintiff treated with her primary care provider for persistent asthma and low back pain. Tr. 730. Her asthma was described as "moderately persistent" with frequent exacerbations aggravated by respiratory infections and smoke. *Id*. It was noted that

Plaintiff was noncompliant with Albuterol, and she was exposed to second-hand smoke. Tr. 733. Her asthma medications were adjusted, and she was continued on Naproxen and started on Gabapentin for her back pain. *Id*.

At her next primary care visit on October 8, 2019, Plaintiff was treated for depression and chronic low back pain with right-sided sciatica. Tr. 434. She also complained of varicose veins in the bilateral lower extremities with pain. *Id*.  Plaintiff was referred to physical therapy for her back pain and a vascular specialist for her varicose veins. Tr. 436. She was also given a Toradol injection. *Id*.

On October 28, 2019, Plaintiff attended a psychiatric visit with Dr. Ahmed. Tr. 917-18. On psychiatric examination, Dr. Ahmed noted anxious and sad mood with constricted affect but otherwise unremarkable mental status findings. *Id*. Dr. Ahmed noted that angry feelings of anxiety, depression and frustration predominated the session and counseled Plaintiff to comply with all medical instructions, particularly medication. Tr. 918. He continued the same medication regimen and advised Plaintiff to allow for at least 8 hours of uninterrupted sleep after taking any sleep medication. *Id*.

On November 2, 2019, Plaintiff presented to her primary care provider, complaining of stress incontinence, breast pain, and exposure to Hepatitis A, due to consuming a product that had been recalled for possible Hepatitis A contamination.   Tr. 428, 721. She was noted to be mildly obese with body mass index of 30.81. *Id*. An examination showed no edema of the lower extremities, normal coordination, full 5/5 strength of all muscles, moderate tenderness of the lumbar spine but normal movements and sensation, normal gait, and normal reflexes. Tr. 723.

On November 5, 2019, Plaintiff attended an initial physical therapy session at Sports Physical Therapy of New York, PC ("Sports PT"). Tr. 478. She reported low back pain with difficulty walking for too long, standing, and cooking. *Id*. She also indicated that she was doing a

lot around the house because her husband was totally disabled. *Id*. Plaintiff reported "clicking" in her right side when lifting her right leg and pain down to her toes. *Id*. An examination showed tenderness and reduced range of motion; full strength in the majority of muscles tested, except hip strength was reduced bilaterally, and abnormal straight leg raise testing. Tr. 479. Plaintiff was diagnosed with right side sciatica and muscle weakness and advised to attend biweekly physical therapy ("PT") sessions. Tr. 480-81. However, Plaintiff returned only sporadically, attending four PT treatments through December 21, 2019, and reporting mild improvement. *See* Tr. 486, 490, 494, 498, 549.

During a psychiatric follow-up visit with Dr. Ahmed on November 25, 2019, Plaintiff reportedly felt depressed with low energy, and she found it difficult to care for her husband and household. Tr. 914. On examination, Plaintiff described her mood as anxious and sad, and her affect was "more constricted," but she was otherwise stable, and the examination showed no significant abnormalities. Tr. 914-15. Her medications included Ambien, Seroquel, Venlafaxine, and Klonopin. Tr. 915.

On December 9, 2019, Plaintiff underwent an MRI of the lumbar spine for evaluation of back pain, which showed left paracentral disc protrusion at L3-4, as well as broad-based disc bulge at L4-5 with minimal spondylosis, and slight posterolisthesis and desiccation of disc at L5-S1. Tr. 466-67.

On December 19, 2019, Plaintiff attended a neurosurgical consultation with Edward Vargo, PA-C ("Mr. Vargo"), and P. Jeffrey Lewis, M.D. ("Dr. Lewis"), at Buffalo Neurosurgery. Tr. 549. Plaintiff complained of right hip and low back pain that had worsened two or three months earlier. *Id*. On examination, Plaintiff was pleasant, had mildly abnormal gait, mildly limited range of motion of the lumbar spine, and reproducible right groin pain, but she also had normal reflexes and equivocal straight leg raise testing. Tr. 550. Mr. Vargo and Dr. Lewis ordered updated right

11

hip, pelvic, and spinal x-rays, after which Plaintiff would be re-evaluated. *Id*. The x-rays, taken on January 2, 2020, revealed unremarkable findings for the right hip and pelvis (Tr. 504-05), while the lumbar spine x-ray showed straightening of normal lumbar lordosis suggesting muscle spasm; minimal decreased disc height at L5-S1; and no spondylosis (Tr. 507).

Plaintiff attended an annual examination with her primary care provider on January 8, 2020. Tr. 714. She continued to complain of persistent "mild to moderate" low back pain and "sharp stabbing" right hip pain predominantly in the groin area. *Id*. Physical examination showed relatively stable and benign findings, including normal posture and gait, intact strength, sensation, and reflexes, and full range of motion of the spine; however, her lower back and right hip were tender to touch and range of motion in her right hip was limited. Tr. 716-17. Plaintiff was given a Toradol injection for her right hip pain and Tizandine, Naproxen, and Gabapentin for her low back pain. Tr. 718.

Plaintiff continued mental health treatment with Dr. Ahmed on January 24, 2020. Tr. 911. She reported that her mood was worse due to her husband's deteriorating health. *Id*. Dr. Ahmed increased Plaintiff's dosage of Venlafaxine, and she was to return in one month. *Id*.

On January 27, 2020, Plaintiff presented to Excelsior Orthopaedics, LLP ("Excelsior Ortho"), for evaluation of her right hip her right hip pain. Tr. 508. Plaintiff indicated that the pain was continuous and aggravated by activity, flexion, and abduction. *Id*. She also complained of pain in her lower back. *Id*. An examination showed tenderness of the right sciatic notch and groin but no obvious instability of the joint and normal muscle tone. Tr. 509. The examination also showed abnormal straight leg raise, normal mood and affect, intact orientation, and intact memory. *Id*. Plaintiff was assessed with right hip pain and possible avascular necrosis. Tr. 510. A right hip MRI was ordered, and Plaintiff was instructed to continue Naproxen as needed for pain. *Id*.

On February 5, 2020, an MRI of the right hip showed grade 2A tear of the lateral right acetabular labrum, as well as right trochanteric bursitis, mild tendinopathy of the hamstring attachments at the ischial tuberosity, and partial thickness articular cartilage defects of the right hip joint. Tr. 614.

On February 7, 2020, Plaintiff attended a consultative internal medicine examination with Dr. Dave. Tr. 559-60. She complained of hip and back pain as well as headaches four days per month and asthma. Tr. 560. Plaintiff indicated that she cooks weekly, shops twice a month, cleans monthly, and dresses and bathes twice per week. *Id*. On examination, Dr. Dave observed that Plaintiff appeared in no acute distress with slightly antalgic gait; she was able to walk on her heels and toes; unab;e to perform full squat; she had full 5/5 strength of upper and left lower extremity but reduced strength of right lower extremity limited by pain; and clear lungs. Tr. 561. Dr. Dave assessed moderate to marked limitation for squatting, crouching, heavy lifting, carrying; moderate restriction against prolonged standing and walking; and she may have moderate to marked limitation for gross motor manipulation through the right lower extremity due to her right hip.. Tr. 562. With regard to headaches, Dr. Dave noted that Plaintiff may have transient limitations for all strenuous physical activity during bouts of severe headaches. *Id*. He also opined that Plaintiff must avoid smoke, dust, fumes, inhalants, chemicals, extremes of temperature, and humidity, due to her asthma. *Id*. Pulmonary function testing showed relatively minor abnormalities. Tr. 564.

On February 7, 2020, Plaintiff underwent a consultative psychiatric examination with Christine Ransom, Ph.D. ("Dr. Ransom"). Tr. 568. Plaintiff described episodes of sadness and some anxiety over her health problems but reported that medication had stabilized her considerably. Tr. 568-69.   An examination showed appropriate hygiene, grooming, and appearance; normal motor behavior; appropriate eye contact; fluent speech; coherent thought process; full range affect; intact orientation; intact attention and concentration; and intact memory

with three out of three recall after delay. Tr. 569-70. Dr. Ransom diagnosed bipolar disorder with mild residual symptomology and unspecified anxiety disorder with mild residual symptomatology and assessed mild limitations in understanding, remembering, and applying simple and complex directions and instructions; using reasoning and judgment to make work-related decisions; interacting appropriately with supervisors, co-workers, and the public; sustaining concentration to perform a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; regulating emotions, controlling behavior, and maintaining well-being; and being aware of normal hazards and precautions. Tr. 570-71.

On February 21, 2020, Plaintiff continued to treat with Dr. Ahmed for her bipolar disorder. Tr. 908-09. She reported that her "mood [was] not good as her husband [was] not doing well." Tr. 908. She also reported that "she felt difference with high dose of Venlafaxine." *Id*. Other than sad/angry mood and constricted affect, mental status examination indicated no significant abnormal findings, and Plaintiff was continued on her medications. Tr. 908-09.

On March 2, 2020, Plaintiff attended a follow-up visit with Nicholas Violante, D.O. ("Dr. Violante"), at Excelsior Ortho, for her right hip pain. Tr. 578. She reported that rest and anti-inflammatories alleviated her pain. *Id*. On examination, Plaintiff had pain with straight leg raise and pain with flexion and external/internal rotation; the examination also showed normal respiration, tenderness over the groin but not sciatic notch, no obvious instability of the right hip, normal muscle tone, normal mood, affect, orientation, and memory. Tr. 579. Dr. Violante indicated that the MRI had ruled out avascular necrosis and referred Plaintiff to a sports medicine provider for further evaluation. *Id*. Plaintiff was to continue Naproxen as needed for pain. Tr. 580.

On March 10, 2020, state agency medical consultant D. Brauer, M.D. ("Dr. Brauer"), reviewed Plaintiff's file and opined that Plaintiff was capable of light work with postural and respiratory limitations. Tr. 77, 581-83. Dr. Brauer also found that Plaintiff could frequently climb

ramps/stairs, climb ladders/ropes/scaffolds, and stoop needed to avoid concentrated exposure to humidity, fumes, odors, dusts gases, and poor ventilation. Tr. 75-76.

On March 16, 2020, agency psychiatric consultant K. Lieber-Diaz, Psy.D. ("Dr. Lieber-Diaz"), reviewed Plaintiff's file and opined that Plaintiff's mental health impairments were non-severe. Tr. 73, 584-86.

Plaintiff continued treatment with Dr. Ahmed for her bipolar disorder on April 13, May 20, June 22, and July 17, 2020. Tr. 897, 899, 902, 905. On May 20, 2020, Plaintiff stated that she was "dealing with stress from the Corona Virus the best she can." Tr. 902. She also reported stress due to "family dynamics." *Id*. However, she reported she was "feeling better" and "feeling less sluggish and slow." *Id*. Her psychiatric examinations remained stable and benign, and her medication regimen was continued except Dr. Ahmed decreased her dosage of Seroquel. Tr. 898, 900, 903.

On May 1, 2020, Plaintiff attended a primary care visit complaining of sore throat and asthma symptoms. Tr. 706-09. Her provider determined that Plaintiff's symptoms were more related to seasonal allergies than strep throat or asthma and adjusted Plaintiff's medications.  Tr. 709.

On June 16, 2020, state agency medical consultant C. Krist, D.O. ("Dr. Krist"), reviewed Plaintiff's file and affirmed Dr. Brauer's prior determination. Tr. 91-94, 587-89. Also on June 16, 2020, state agency psychological consultant J. May Ph.D. ("Dr. May"), reviewed Plaintiff's file and affirmed Dr. Liber-Diaz's prior determination. Tr. 89-90, 590-92.

On June 19, 2020, Plaintiff attended a follow-up visit with Ryan Wilkins, M.D. ("Dr. Wilkins"), at Excelsior Ortho, for ongoing right hip pain. Tr. 605-07. She "described her pain as burning at a level of 2/10" and reported her pain was aggravated by activity, flexion, and abduction, and alleviated by anti-inflammatories and rest Tr. 605. On examination, Dr. Wilkins noted limited hip range of motion and tenderness to palpation over the greater trochanter. Tr. 606. The

examination also showed antalgic but well-coordinated gait, no assistive device, no deformity of the right hip, reduced range of motion, slightly reduced 4/5 strength, intact sensation throughout the right lower extremity, and unremarkable findings of the left hip. *Id*. Plaintiff was diagnosed with an anterior labral tear of the right hip and referred for corticosteroid injections. Tr. 607. Dr. Wilkins indicated that Plaintiff's pain was likely multifactorial, and he expressed concern that the lumbar spine was contributing to her symptoms. *Id*.

Plaintiff returned to Excelsior Ortho on July 20, 2020, and received a right hip joint injection. Tr. 608-09. On August 17, 2020, Plaintiff had a follow-up visit with Dr. Wilkins. Tr. 610-12. She continued to complain of right hip pain and reported no improvement from the injection. Tr. 610. On examination, the right hip was stable, and x-rays performed that day were found to be normal. Tr. 612, 616. Plaintiff was referred for PT, and she was to follow up with her lumbar spine provider. Tr. 613.

At a primary care visit on July 27, 2020, Plaintiff complained of dysuria and migraines. Tr. 699-701. The treatment note indicated that Plaintiff's intractable migraines were previously controlled by Imitrix, and her provider restarted Plaintiff on this medication. Tr. 701.

Plaintiff treated with Dr. Ahmed again on August 19, 2020. Tr. 894-95. She complained of lack of motivation, but her examination remained stable and unremarkable other than sad and angry mood and constricted affect. *Id*.

On August 25, 2020, Plaintiff returned to Dr. Lewis at Buffalo Neurosurgery, who indicated that Plaintiff was a good candidate for L5-S1 disc herniation and lumbar discectomy and fusion. Tr. 595-96.

During a primary care visit on September 17, 2020, Plaintiff complained of a lump that appeared on her thigh after intentionally losing 18 pounds. Tr. 690. She denied anxiety and depression, and an examination showed normal findings of appearance, orientation, posture, and

16

gait.  Tr. 691-92. Her provider assessed the lump as a skin lesion "likely from adipose tissue secondary to weight loss." Tr. 695.

With Dr. Ahmed on September 18, 2020, Plaintiff complained of poor concentration, attention, and feeling panicky; however, but her psychiatric examination findings were again unremarkable with normal memory, attention, concentration, and demeanor. Tr. 891-92. Dr. Ahmed also completed another Medical Examination for ABAWD Determination. Tr. 930-31. Dr. Ahmed diagnosed Plaintiff with bipolar disorder and again indicated her prognosis was limited; assessed that her limitations precluded her from working in competitive employment for at least 80 hours per month; and her limitations were permanent and have lasted or would last at least 12 months. Tr. 930-31.

At her next visit with Dr. Ahmed on October 16, 2020, Plaintiff did not report feeling anxious or panicky and stated her mood was "ok." Tr. 888. She reported hearing music even after turning off the television or other music. *Id*. Dr. Ahmed continued to note unremarkable examination findings. *Id*. Plaintiff was continued on her medications, but Dr. Ahmed started her on Olanzapine for auditory hallucinations. *Id*.

On November 2, 2020, Plaintiff presented to the Emergency Department ("ED") at Mercy Hospital of Buffalo, for evaluation of headache Tr. 624. She rated her pain as 4/10 and stated that Imitrex and Tylenol helped, but the pain never goes away. *Id*. She also reported episodes of chest tightness and palpitations associated with the headaches. *Id*. She denied other symptoms, including back and joint pain.  Tr. 625.  An examination showed normal respiration, normal motor strength, normal mood, and intact orientation. Tr. 627.  A CT scan was negative, and she had no neurological deficits to warrant MRI. Tr. 628, 650. Plaintiff was discharged home and advised to follow up with her primary care provider and possibly a neurologist.  Tr. 629.

At a primary care follow-up visit on November 3, 2020, Plaintiff indicated that her headache was still present but less severe. Tr. 677. An examination showed normal neurological findings, including orientation, attention span, concentration, sensation, coordination, memory, and reflexes.  Tr. 679.

On November 9, 2020, Plaintiff was treated for headaches by Peterkin Lee-Kwen, M.D. ("Dr. Lee-Kwen"), at Southtowns Neurology. Tr. 939. Plaintiff reported right temporal region pain radiating to the frontal head and behind the eye and associated nausea, dizziness, and photophobia. *Id*. It was noted that Plaintiff's bipolar disorder symptoms were controlled with Klonopin and Seroquel, and she denied depression during this visit. Tr. 940, 94. An examination showed decreased sensation of the feet but symmetric reflexes, normal walking, normal strength, normal muscle tone, appropriate affect, and CT was negative for acute pathology. Tr. 940.  Plaintiff was administered an injection of Aimovig to help "reduce the headache frequency" and prescribed Topiramate and Prednisone to "break the headache cycle." *Id*.

Plaintiff treated with Dr. Ahmed on November 16, 2020, and December 16, 2020. Tr. 882, 885. She endorsed depression and anxiety and denied any hallucination, and psychiatric examination was unremarkable. Tr. 883, 886.

At her next appointment with Southtowns Neurology on December 4, 2020, Plaintiff reported that she "felt better overall" and "felt the injection did help her significantly." Tr. 942. She reported that her headache frequency had improved from five headaches per month to three headaches per month. *Id*. On examination, Dr. Lee-Kwen noted that Plaintiff's bipolar disorder "appear[ed] to be unstable," and her anxiety "appear[ed] to be not well controlled." Tr. 943. Plaintiff displayed reduced attention, concentration and some tangential speech. *Id*. Dr. Lee-Kwen stopped Prednisone and continued Topiramate. *Id*.

18

On December 14, 2020, Plaintiff indicated that her headaches had improved since starting prescribed medication, but she reported having mild headaches that woke her from sleep.  Tr. 671. A neurological examination showed stable and unremarkable findings. Tr. 673-74. Plaintiff was referred to neurology and restarted on Imitrex. Tr. 675.

On December 17, 2020, Plaintiff attended an initial consultation with Laura Ford-Mukkamala, D.O. ("Dr. Ford-Mukkamala"), at Great Lakes Cardiovascular for "history of paroxysmal atrial fibrillation, maintained on digoxin." Tr. 844. Plaintiff reported episodes of fatigue, and shortness of breath which occurred a few times a week. *Id*. Dr. Ford-Mukkamala ordered an echo and an event monitor for one week, after which Plaintiff was to follow up annually if no issues. Tr. 846.

On January 11, 2021, Plaintiff presented to her primary care provider for a physical. Tr. 660-65. She indicated that she was feeling well and denied any musculoskeletal and psychiatric symptoms.  Tr. 661. She presented as cooperative, displayed normal respiration, normal sensation, coordination, and strength, full range of motion of the spine, symmetric reflexes, and normal gait. Tr. 662-63. Plaintiff's provider requested a referral for a neurology second opinion and continued Plaintiff on Topamax for her headaches. Tr. 665.

On January 15, 2021, Plaintiff treated at UBMD for hypothyroidism and thyroid nodule (Tr. 819) and continued on Levothyroxine (Tr. 824).

At her most recent documented psychiatric visit on January 20, 2021, Plaintiff reported that her mood was better and she and her husband were eagerly waiting for the results of their disability hearings. Tr. 879. Plaintiff's psychiatric medications included Olanzapine, Klonopin, Seroquel, Venlafaxine, and Zolpidem Tartrate. *Id*. Her examination was stable and benign showing no significant abnormalities other than mood and affect. Tr. 879-80.

As noted above, Plaintiff asserts several challenges to the ALJ's RFC finding. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed her application on October 9, 2019, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no

Case 1:22-cv-00216-DB   Document 19   Filed 07/24/24   Page 22 of 38

longer make medical opinions from treating sources eligible for controlling weight. Rather, the

new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical findings(s), including those from [the claimant's own] medical

sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior

regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a

prior administrative medical finding). *Id*. The source of the opinion is not the most important factor

in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors

are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way

medical opinions are considered, but they also alter the way the ALJ discusses them in the text of

the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not

required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her

finding about whether an opinion is persuasive, the ALJ need only explain how he or she

considered the "most important factors" of supportability and consistency. *Id*. Further, where a

medical source provides multiple medical opinions, the ALJ need not address every medical

opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions

by other governmental agencies and nongovernmental entities, disability examiner findings, and

statements on issues reserved to the Commissioner (such as statements that a claimant is or is not

disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a

claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear

that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's arguments, the ALJ's RFC finding was supported by substantial evidence, including the opinion evidence, Plaintiff's treatment records and medical imaging results, evidence of improvement and stabilization with medication, and Plaintiff's own statements about her symptoms and daily activities. Tr. 25-33. *See* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff first argues that remand is warranted because the ALJ failed to incorporate the standing and walking limitations assessed by Dr. Dave and improperly relied on the opinions of state agency reviewing physicians Drs. Brauer and Krist, over the examining opinion of Dr. Dave. *See* ECF No. 6-1 at 14-23. Contrary to Plaintiff's argument, however, the ALJ sufficiently

explained his rationale for finding the opinions of Dr. Brauer and Dr. Krist "persuasive" and Dr. Dave's opinion "somewhat persuasive." Tr. 31-32.

In March 2020, Dr. Brauer assessed that Plaintiff was capable of performing light work, with no more than frequent climbing and stooping and a restriction against concentrated exposure to humidity, respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation. Tr. 76. Dr. Brauer's report extensively documented evidentiary support for the assessment, which included Plaintiff's spine and hip imaging, and her reported symptoms and aggravating factors, as well as Dr. Dave's examination findings. Tr. 76-77; *see* 20 CFR § 416.920c(c)(1) (The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.). The ALJ also found Dr. Brauer's report to be generally consistent with the record as a whole, which documented relatively mild objective medical findings, Plaintiff's routine and conservative treatment history, and her various activities of daily living. Tr. 31-32; *see* 20 CFR 416.920c(c)(2) (The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.).

The ALJ also found that Dr. Brauer's opinion was not stale, as there was no evidence that Plaintiff's musculoskeletal condition significantly worsened after March 2020. Tr. 32. However, based on Plaintiff's testimony, Dr. Dave's examination report, and other evidence, the ALJ assessed additional and/or more restrictive postural and environmental restrictions. Tr. 25, 32. The ALJ applied the same analysis to Dr. Krist's June 2020 report, which affirmed Dr. Brauer's findings. Tr. 31-32, 91-94, 587-89; *see Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) (opinion of State agency physician can provide substantial evidence to support ALJ's RFC finding,

provided that it is supported by evidence in the record); *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d. Cir. 2012) (same).

With respect to Dr. Dave's February 2020 opinion, the ALJ noted that he found Dr. Dave's findings of exertional *(i.e.*, lifting), postural, and environment limitations generally consistent with the record as a whole, which indicated relatively mild findings in diagnostic studies and physical examinations. Tr. 32. The ALJ noted that Dr. Dave's opinion was "not in vocationally relevant terms," but it nevertheless added value by showing the need for limitations in squatting, crouching, and exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, and gases—limitations which had not been acknowledged in the reports of Drs. Brauer and Krist. Tr. 25, 32. However, the ALJ declined to fully accept Dr. Dave's opinion of "moderate to marked" limitations. *Id*.

Plaintiff contends that the ALJ's analysis of Dr. Dave's opinion was deficient because the ALJ "did not specifically discuss Dr. Dave's opinion that Plaintiff has a moderate limitation for standing and walking" and did not explain why he "reject[ed]" that particular finding. *See* ECF No. 6-1 at 18. Plaintiff further argues that this portion of Dr. Dave's opinion would rule out an RFC for light work. *See id*. at 18-19. However, as discussed above, light work requires standing or walking, off and on, for a total of approximately six hours, with intermittent sitting during the remaining time. *See* SSR 83-10 (defining light work). Therefore, it was, reasonable for the ALJ to conclude that an opinion of moderate limitations in prolonged walking was consistent with an RFC for light work. Furthermore, courts have held that a moderate limitation in prolonged standing and walking is not inconsistent with an RFC for light work. *See, e.g.*, *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756 at * 15 (W.D.N.Y. Feb. 25, 2015) (moderate limitation in sitting, standing, and walking not inconsistent with RFC that claimant could sit, stand, and walk for six hours a day respectively and supports a finding of light or medium work); *see also Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-0638 (DNH/VEB), 2011 WL 2357665 *6 (N.D.N.Y. May 20,

2011) (moderate limitation in lifting, prolonged sitting, and prolonged standing and walking supported an RFC for light work). In addition, courts have found that even greater than moderate limitations can be consistent with light work. *See Figgins v. Berryhill*, 15-cv-6748, 2017 WL 1184341, *8 (W.D.N.Y. March 29, 2017) (affirming RFC for light work, which was based, in part, on consultative examiner's opinion that plaintiff would have moderate-to-severe limitations in standing, walking, squatting, bending, and lifting). Thus, Dr. Dave's opinion constitutes substantial evidence in support of the ALJ's RFC finding. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence in the record).

Plaintiff also argues that because the ALJ found Dr. Dave's opinion vague the ALJ was required to re-contact Dr. Dave for clarification of her opinion. *See* ECF No. 6-1 at 18. This argument is without merit. As noted above, the ALJ found Dr. Dave's assessment of moderate or moderate to marked physical limitations "less persuasive" because it was "not in vocationally relevant terms." First, although the ALJ stated that he found Dr. Dave's assessment of moderate to marked physical limitations "less persuasive," he did not specifically use the term "vague" in his discussion of Dr. Dave's opinion, as Plaintiff suggests. *See* Tr. 32. More importantly, however, an ALJ need not further develop the record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *See Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez v. Chater*, 77 F.3d. 41, 48 (2d Cir. 1996); *see also* 20 C.F.R. §§ 404.1520b(b)(1), 416.920b(b)(1)-(2) (If the evidence is incomplete or inconsistent but sufficient for the ALJ to make a decision, she will make a decision based on the existing evidence); *Rosa*, 168 F.3d at 79 n.5 (citing *Perez* v, 77 F.3d at 48) ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of

rejecting a benefits claim."); *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. Jan. 8, 2015) (summary order) (although an ALJ has a duty to develop the record, where there are no obvious gaps and the ALJ possesses a complete medical history, he is under no obligation to seek a treating-source opinion (citations omitted)).

In addition, a record that does not support a physician's opinion does not necessarily mean that the record contains gaps or deficiencies that require re-contact. *See Guillen v. Berryhill*, 697 F. App'x. 107, 108 (2d Cir. 2017) (citing *Rosa*, 168 F.3d at 79, fn. 5); *see also Monroe*, 676 F. App'x 5, 9 (2d Cir. 2017; *Micheli*, 501 F. App'x at 29–30 ("[B]ecause it is the sole responsibility of the ALJ to weigh the evidence and resolve any material conflicts [,] where the record provides sufficient evidence for such a resolution, [the ALJ] can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent."). Thus, the ALJ has discretion to determine whether record evidence is sufficient to make a disability determination, and if it is not, to require further record development. *See* 20 C.F.R. § 416.920b(a)-(b). Here, the ALJ properly determined that he could render a decision based on the 900-plus–page record already before him despite his finding that Dr. Dave's assessment of moderate to marked physical limitations was "not in vocationally relevant terms." Moreover, as the ALJ noted, no treating source had identified greater physical limitations than assessed in the RFC. Tr. 32.

Plaintiff also argues that the ALJ erred by failing to assess her claim as a "borderline" claim based on her proximity in age to a different age bracket. *See* ECF No. 6-1 at 19-21. Specifically, Plaintiff argues that if she were limited to sedentary work and the ALJ had classified her as "closely approaching advanced age," Section 201.14 of the Medical-Vocational Guidelines (the "Grid Rules") would have directed a finding of disability." *See id*.

When making a disability determination, an ALJ must "consider [the claimant's] chronological age in combination with [his] residual functional capacity, education, and work

experience." 20 C.F.R. § 404.1563(a). Because the SSA considers "advancing age to be an increasingly limiting factor in the person's ability" to adjust to other work, *id*., the grids provide for three distinct age categories: (1) "younger person," meaning an individual between the ages 18 and 49; (2) "person closely approaching advanced age," meaning an individual between the ages 50 and 54; and (3) "person of advanced age." meaning an individual 55 years of age and over. 20 C.F.R. §§ 404.1563(c)-(e). "The distinction between being classified as a 'younger person' and being classified as a 'person closely approaching advanced age' can be dispositive in determining whether an individual qualifies as disabled." *Grace v. Astrue*, No. 11 Civ. 9162 (ALC) (MHD), 2013 WL 4010271, at *24 (S.D.N.Y. July 31, 2013).

Because Section 201.14 applies to individuals who can only perform sedentary work (rather than light work), Plaintiff's argument that the ALJ would have found her disabled had the ALJ used the older age category holds true only if the ALJ erred in finding Plaintiff capable of "light work." *See Rodriguez v. Comm'r of Soc. Sec.*, No. 15-CV-6596 (ALC), 2016 WL 5660410, at *10 (S.D.N.Y. Sept. 30, 2016) (citing 20 C.F.R. Pt. 404, Subpt. P. App. 2). There is no such error in the present case. As explained above, the ALJ's determination that Plaintiff could perform a range of light work with certain exertional and postural limitations was supported by substantial evidence, and therefore, the ALJ need not have considered Plaintiff as a "borderline" case.  Thus, even if Plaintiff had been considered in the older age category of "person closely approaching advanced age," she would not have been found to be disabled. Accordingly, and contrary to Plaintiff's contention, there is no borderline age issue in this case.

In addition to the opinion evidence, the ALJ also relied on treatment records and other objective evidence demonstrating mild to moderate clinical findings to support his physical RFC finding. Tr. 27- 30. The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20

C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). Thus, opinion evidence is only one type of evidence an ALJ is required to consider.

The ALJ recognized that Plaintiff's musculoskeletal impairments at the lumbar spine and hip and reasonably limited Plaintiff to light work, with only occasional performance of postural activities involving the back and/or lower half of the body (*i.e.*, climbing, stooping, kneeling, crouching, and crawling). Tr. 25. However, the ALJ also noted that objective evidence, as well as Plaintiff's own statements, indicated that these issues, while severe, did not cause a disabling level of functional impairments during the relevant period. Tr. 31-32.

First the ALJ noted that imaging during this period indicated no more than mild or moderate structural issues. Tr. 27-29. For example, a December 2019 MRI study showed left paracentral disc protrusion at L3-4, as well as broad-based disc bulge at L4-5 with minimal spondylosis and slight posterolisthesis and desiccation of disc at L5-S1. Tr. 27, 467. In January 2020, x-rays showed an unremarkable pelvis and right hip, as well as minimal degeneration and no spondylosis in the lumbar spine. Tr. 27, 504-505, 507. In February 2020, an MRI study of the right hip showed a grade 2 tear of the right acetabular labrum, as well as some findings of bursitis, mild tendinopathy, and cartilage defects, and ruled out avascular necrosis. Tr. 28, 556, 579. In August 2020, x-rays of the right hip were normal, showing no evidence of fracture, dislocation, or significant arthritic changes. Tr. 29, 616. Based on the foregoing, the ALJ reasonably concluded that Plaintiff's allegations regarding her back and hip impairments were not fully supported by these consistently benign diagnostic studies. Tr. 33.

The ALJ also noted that Plaintiff complained of back and/or hip pain at medical appointments dating from October 2019 through August 2020 (Tr. 434, 722, 478, 549, 504-505, 714-717, 508, 559-560, 578, 605, 608-609, 611, 595), but in January and June 2020, she rated her hip pain at only 2/10 in severity (Tr. 508, 605). Tr. 27-30 The ALJ also noted that Plaintiff did not fully comply with recommended physical therapy, and although her neurosurgeon recommended back surgery in August 2020, Plaintiff did not pursue surgery, nor did the record show that she sought another opinion or any further specialized care for her lumbar spine or hip after August 2020. Tr. 33. *Navan v. Astrue*, 303 F. App's 18, 20 (2d Cir. 2008) (a claimant's allegations of disability are undermined by a failure to seek regular treatment for the allegedly disabling conditions). In addition, the ALJ noted that, at subsequent medical and psychiatric appointments from September 2020through January 2021, Plaintiff denied musculoskeletal symptoms. Tr. 30-31, 691-693, 686, 624, 677, 940, 885-886, 942-943, 671, 882, 661, 880.

The ALJ also outlined a trend of mild to moderate physical examination findings. Tr. 27-30. For example, on November 2, 2019, although Plaintiff complained of back pain, examination by her primary care provider found moderate tenderness of the lumbar spine but normal movements and sensation, normal gait, and normal reflexes. Tr. 27, 723. At a November 5, 2019 physical therapy appointment, Plaintiff rated her pain as 6/10, and the provider noted a normal gait, tenderness, mildly restricted muscle flexibility, reduced hip strength, and full lumbar range of motion (except in extension, which reached 80% of normal). Tr. 27, 479-80. On December 19, 2019, Plaintiff was observed with mildly abnormal gait, mildly limited range of motion of the lumbar spine, reproducible right groin pain, normal reflexes, and equivocal straight leg raise testing. Tr. 27, 550.

On January 8, 2020, Plaintiff's primary care provider noted benign examination findings, including intact strength, sensation, and reflexes, full range of motion of the spine, and normal

gait. Tr. 27, 717. On January 27, 2020, Plaintiff's orthopedic provider noted tenderness of the right sciatic notch and groin and an abnormal straight leg raise, but no obvious instability of the right hip joint, and normal right hip muscle tone. Tr. 27-28, 509. At her internal medicine consultative examination on February 7, 2020, Plaintiff was observed with slightly antalgic gait and an inability to perform a full squat. Tr. 28, 561-62. However, she also had the ability to walk on her heels and toes; full 5/5 strength of upper and left lower extremities; generally normal range of motion throughout the body, except for reduced right hip motion and slightly reduced lumbar extension; reduced strength of right lower extremity; and negative straight leg raise bilaterally. *Id*. At a March 2, 2020 orthopedic appointment to assess right hip pain, Plaintiff was found with tenderness over the groin but not over the sciatic notch. Tr. 28, 579.The orthopedist further noted some pain with straight leg raise testing, flexion, and internal/external rotation, but no obvious instability of the joint and normal muscle tone. *Id*.

At a June 19, 2020 orthopedic follow-up visit regarding her right hip, Plaintiff was found with no joint deformity, reduced range of motion, slightly reduced 4/5 strength, and intact sensation throughout the right lower extremity. Tr. 29, 606. She presented with an antalgic but well-coordinated gait without the use of any assistive device. *Id*. Her orthopedist indicated that her pain was likely multifactorial and expressed concern that the lumbar spine was contributing to her symptoms. Tr. 607. Physical examinations have shown equivocal findings of strength, straight leg raise, and gait and generally show intact reflexes and sensation. On July 20, 2020, Plaintiff presented with similar complaints and some improved findings on examination, including normal gait and full 5/5 strength of both lower extremities. Tr. 29, 608-09.

On August 17, 2020, Plaintiff was observed with an antalgic, but well-coordinated gait; no assistive device; no deformity of the right hip; tenderness to palpation at the right hip, and some range of motion limitations. Tr. 29, 612. She stated that a local anesthetic injection given the

31

previous month provided no relief from symptoms, and she was again referred to physical therapy. Tr. 29, 611, 613. Primary care records after this date noted normal posture and/or gait, but generally did not address back or hip symptoms, and on most visits, Plaintiff denied any musculoskeletal issues. *See, e.g.*, Tr. 692, 686, 673, 679, 669. However, on January 11, 2021, the last primary care visit in the record, examination findings included tenderness and limited range of motion of the right hip, but Plaintiff still demonstrated normal gait and posture, and full range of motion of the spine. Tr. 663. As mentioned previously, the ALJ also noted that Plaintiff did not fully comply with recommended physical therapy, did not pursue recommended back surgery, and did not seek another opinion or any further specialized care for her lumbar spine or hip after August 2020. Tr. 33.

Finally, the ALJ considered Plaintiff's daily activities, which included cooking weekly, shopping twice a month, cleaning the home monthly, and dressing and bathing twice per week. Tr. 33, 560. The ALJ found these activities inconsistent with Plaintiff's testimony that she spent most of the day in bed, could not prepare meals, and could not perform household chores. Tr. 31, 33.

Based on the foregoing, the Court finds that the ALJ's physical RFC finding was supported by substantial evidence, including the opinions of Drs. Dave, Brauer, and Krist, medical imaging, treatment records showing mostly mild to moderate physical examination findings, the limited duration and scope of Plaintiff's specialized treatment for her back and hip, and Plaintiff's daily activities. Accordingly, the Court finds no error in the ALJ's physical RFC finding.

Plaintiff's second point of error contends that, because the ALJ found her migraine headaches to be severe, he should have included a 10% off-task time allowance in the RFC finding to accommodate this condition. *See* ECF No. 6-1 at 23-25. This contention lacks merit, as there is no evidence in the record to support such an allowance, and the mental RFC finding is supported by substantial evidence, as discussed further below.

First, the ALJ recognized Plaintiff's complaints of migraine headaches but also noted that her headaches were treated effectively with medication. Tr. 28, 559-60. Notably, the ALJ addressed a series of medical appointments toward the end of the relevant period that focused on headache complaints. *See* Tr. 30 (citing 624-652, 671-679, 940 -943). In November 2020, Plaintiff presented to the ED for headache pain but indicated pain at only 4 out of 10. Tr. 624. She reported that the pain "never goes away," but Imitrex and Tylenol helped alleviate it. *Id*. As the ALJ noted, a CT scan was negative, Plaintiff had no neurological deficits to warrant MRI, and she was discharged after several hours of monitoring. *Id*. At a neurology visit shortly thereafter, Plaintiff received an injection of Aimovig to help "reduce the headache frequency" and prescribed Topiramate and Prednisone to "break the headache cycle." Tr. 30, 940. On December 4, 2020, she reported to her neurologist that she felt better overall and felt that the injection helped her significantly. Tr. 943.

Plaintiff's treatment records from other providers are consistent with her reports of improvement after her November 9, 2020 neurology appointment. For example, on November 16, 2020, Plaintiff told her psychiatrist that she recently had a period of bad headache symptoms that caused her to miss a prior psychiatry appointment, but she had since been prescribed medications including Prednisone and Topamax. Tr. 885. She did not complain of headache symptoms during that psychiatry appointment and similarly made no mention of headache symptoms at subsequent psychiatry appointments on December 16, 2020 and January 20, 2021. *See* Tr. 879, 880, 885. Plaintiff also made no mention of headache pain at an endocrinology appointment on December 15, 2020. Tr. 819. At her last documented primary care visit on January 11, 2021, Plaintiff reported feeling well, without a headache, and the provider reported her headaches were stable on Topiramate. Tr. 31, 661, 665.

The medical opinion evidence also does not support an allowance for off-task time. As the ALJ noted, Dr. Dave's opinion indicated that "there may be transient limitations for all strenuous physical activity during bouts of severe headaches," but Dr. Dave did not indicate that Plaintiff's headaches would render her off task. Tr. 28, 562. Consistent with Dr. Dave's opinion, the RFC finding excludes strenuous physical activity and restricted Plaintiff to a reduced range of light work. Tr. 25. The medical opinions of Dr. Lieber-Diaz (Tr. 72-73), Dr. Brauer (Tr. 75-77), Dr. Krist (Tr. 91-94), Dr. Ransom (568-71), and Dr. May (Tr. 89-90) similarly made no mention of any need for off-task time. *See Edward S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1550 (TWD), 2022 WL 846315, at *10 (N.D.N.Y. Mar. 22, 2022) ("the lack of any explicit provision for absences or breaks signifies that the state agency physicians concluded that Plaintiff could sustain a 40-hour workweek").

As previously noted, Plaintiff bears the ultimate burden of establishing that she was disabled during the relevant period, and that the ALJ's RFC finding should have been more restrictive. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(G); 20 C.F.R. § 416.912(a); *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Valentin v. Comm'r of Soc. Sec.*, 820 F. App'x 71, 713 (2d Cir. 2020) ("Valentin does not identify any evidence supporting a more limited RFC."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). Based on the foregoing, the Court finds that the ALJ properly considered the totality of the evidence to reach an RFC finding that was supported by substantial evidence, and the Court finds no error.

Plaintiff's final point of error contends that the mental RFC finding was defective because it was "not tethered to any medical opinion evidence," and therefore, it was improperly based on the ALJ's lay judgment. *See* ECF No. 6-1 at 25-30. Contrary to Plaintiff's argument, the ALJ

properly considered all the evidence in arriving at the mental RFC, and substantial evidence supports that finding. Tr. 28, 32. Furthermore, the ALJ was not required to rely on an opinion that mirrored the RFC, as Plaintiff argues. Here, the ALJ properly analyzed the opinions of consulting psychological examiner Dr. Ransom and state agency psychiatric consultants Dr. K. Lieber-Diaz and Dr. May, as well as the other evidence of record in assessing Plaintiff's mental RFC, and ultimately concluded that Plaintiff was more restricted than the medical sources suggested. Tr. 28, 32.

First, the ALJ properly declined to consider the statements of treating psychiatrist Dr. Ahmed that Plaintiff 's impairments precluded her from "working in competitive employment for at least 80 hours per month." *See* Tr. 31, 931, 933. These statements constitute "statements on issues reserved to the Commissioner" and need not be considered by the ALJ. *See* 20 C.F.R. § 416.920b(c)(1)-(3) (statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) are considered evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled," and the ALJ need not provide any analysis as to how the statements were considered).

Next, the ALJ was "somewhat persuaded" by the assessments of Dr. Lieber-Diaz (Tr. 73, 584-86) and Dr. May (Tr. 89-90, 590-92), who concluded that Plaintiff's psychological impairments were not severe. Tr. 32. In making this determination, the ALJ recognized that the record as a whole, including Plaintiff's consistently benign mental status examinations, her routine and conservative treatment history showing improvement, as well as her activities of daily living, did not indicate a disabling degree of mental infirmity. Tr. 32, 33. However, the ALJ found that Plaintiff's longitudinal record of past and ongoing psychiatric treatment supported meeting the *de minimis* severity requirement and, therefore, reduced Plaintiff to only simple work for two hours at a time to account for her depressive and anxiety disorders. Tr. 32. As the ALJ noted, psychiatric

treatment records since mid-2019 documented that Plaintiff remained on multiple medications and had depressed mood and effect, but otherwise, she had normal mental status examination results. Tr. 27-30, 31, 878, 880-914.

The ALJ was also not persuaded by Dr. Ransom's opinion that Plaintiff had mild limitations in all areas of mental functioning, which would only mildly interfere with her daily functioning. Tr. 32, 568-71. The ALJ noted that the term "mild limitations" was vague and the opinion lacked vocationally relevant terms, and again noted that the record as a whole supported greater limitations in concentration, persistence, or pace. Tr. 24, 32. The ALJ explained that, on the basis of this evidence, and in particular the evidence of Plaintiff's persistent depression and anxiety, he limited Plaintiff's mental RFC to simple work only, in intervals of no more than two hours at time. Tr. 32.

Although the mental RFC finding did not fully mirror any one medical opinion, this does not mean that the mental RFC was impermissibly based on the ALJ's "lay interpretation" of the medical evidence, as Plaintiff argues. *See* ECF No. 6-1 at 25-28; 20 C.F.R. § 416.913(a) (describing categories of evidence considered by the ALJ in assessing a disability claim). Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Nothing in the Act, regulations, or rulings indicates that the ALJ must rely on a medical source opinion in assessing the RFC. As the Second Circuit recently affirmed, "the ALJ's RFC conclusion

need not perfectly match any single medical opinion in the records, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Matta*, 508 F. App'x at 56 (2d Cir. 2013)).

As discussed above, the ALJ here made a reasonable assessment of Plaintiff's mental abilities, based on substantial evidence including mental status examinations, Plaintiff's psychiatric history, Plaintiff's statements about her symptoms and activities, and information from medical source opinions. Plaintiff bears the burden of establishing that she was disabled during the relevant period and that the ALJ's mental RFC finding should have been more restrictive. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(G); 20 C.F.R. § 416.912(a); *Poupore*, 566 F.3d at 306. Plaintiff has not met this burden. Accordingly, the Court finds no error in the ALJ's mental RFC finding.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If the evidence is susceptible to more than one rational interpretation, the Commissioner' s conclusion must be upheld."). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and

means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE